I've been told that I don't need a microphone to reach Washington. I don't know if this if I'm loud enough or not May it please the court. I'm Gary Green here with my partner Robert Davich you represent the appellant plaintiff James Luciani What I'm tell us why why he didn't take it That's right. I'm sorry. Yes, I'd like to reserve five minutes Tell us why he didn't take advantage of the post-termination remedy here The cut it off and and why that's not significant, okay Um, I would I'll give the factual answer first and then I explain why it's legally not significant he waited two years before he had the hearing and When he was in the hearing he was advised that it would take another two years I Believe that the effectiveness of the post-termination Provisions due process rights is it whether that's effective or not is an issue of fact for the jury. I will agree with your honor that I considered the possibility of Withdrawing that claim based on the Schmitt Alvin ladder-mill cases where as a matter of law if there is a deprivation Denial of due process that is a complete constitutional violation And under the theory that all roads lead to Rome Meaning I'm only going to get one recovery regardless of what cause of action or constitutional theory. I prevail on I Understand that is not the strongest cases my First Amendment case and my case for a pre Redeprivation termination are very strong but if I the Court in shit, and it was judge Roth wrote the opinion If I was a long line of cases that grow out a ladder mill that says if you're pre deprivation Proceeding is a sham then you have a Constitutional violation by the way I using the word sham may be the wrong word Because the this circuit is one of the few who have described a lack of constitutional Provisions and said that if that happens at the pre termination stage, that's a sufficient violation But I haven't used the word sham But I would like to point out that in this district There was a case going versus Township of Monroe, which we cited in our brief which did follow the what is now becoming the Descriptive name for not getting a fair hearing at the predetermination stage the Sixth Circuit in Cruz versus City of Roswell 861 Fed 2nd 878 7th Circuit in Ryan, which is at 185 Fed 3rd 751 and the 9th Circuit in Matthews, which is 8 19 Fed 2nd 8 8 9 they all they all say the same thing And if I could just explain why there was a sham here because I I would submit to the court that all of The events that happened are tied in and all of these things have presented to a jury Will demonstrate that each of the constitutional deprivations? occurred I Well, there's a long set of facts here. I would just like to highlight very quickly I can't hear you. Okay, is this better? I can't I can't hear so Can we terminate take a five-minute recess and replace the call? Yes, we will that's what we'll take a five-minute recess Replace the call sure see if we can get a better connection. So I sit down. It's fine. Okay. Thank you Well, that's what we'll do Jane. Thank you I'm also texting Okay, great, okay Frustrating yeah Can you go ahead and Hi Pat, hi, how are you doing? Okay. I'm just gonna start counting to see if at any point I cut off I'll just read off the court crisis I cut off you can let me know. I did check the wiring here. So I mean everything appears to be okay As the sound okay so far as I'm talking to you, yes, okay How about if I speak closely like that does it cut out everything is still fine. All right It's hard to say where the problem lies maybe it was the connection and maybe this is just I'm sorry Also, we I think we had a loose mic connection and when it was one of the The council bumped into the mic where it will cut out They are bad. I see how close it is on you know, give it a podium there. So I Don't know. Maybe if you just start reading for a few minutes we can And sort of like pull the mic up and down a little No, I mean you do Like as I'm speaking, maybe move it around like that All right, one two, three, four five six seven eight nine ten Yeah Now see actually you just cut out a little bit there for a second too, but when I was moving it it was cutting out It's really cutting in and out now it's cutting in and out now Yes, okay So maybe I'm gonna disconnect and just reconnect again too, okay, okay, okay You Yeah, so sometimes that happens hello hello again Okay, so do you just want to like not test the mic and just read from the paper sure Okay, all persons having business with the Honorable United States Court of Appeals for the Third Circuit are admonished strong here and Give their attention for this court is now in session God save the United States in this honorable court Did that come through? Okay? Yeah, everything's fine. Yeah, so I wonder if we all encourage counsel to not touch For that matter So, okay speaking at this distance I'm coming through perfectly clear to you now Yeah, okay All right, would you like to begin again then? Yeah, all right judge judge Roth. I will let the other panel members know that you're ready to go Okay, thank you Okay, so if you're speaking at the podium just try not to touch it appears to be pretty sensitive today so I would appreciate your sensitivity Thank you And we're gonna try again and we left about eight minutes, is that right Susan, okay So can you hear us now judge Roth? Loud and clear. Yeah, mr. Green say something just testing. I'm still Gary Green It's all right, may I proceed? Yes, sir. Yeah Help me with this I'm concerned with an opinion that says that you don't have to go ahead with a hearing. I'm sorry doing that. I'm concerned with a Opinion that says you don't have to go. You don't you don't have to take advantage of the post termination Well, you know, I think maybe you let's say you make a good argument on some of the equities in your case How do we distinguish? Well, if I might I think that there are there's a policy reason for requiring a pre termination hearing and there's a Whereas a sham pre-termination hearing cannot be rescued By a great post termination hearing or post deprivation hearing look what happened in this case the Pre-terminate the pre deprivation hearing resulted in my client being fired and he didn't have the next level for two years and That meant that a man his age almost 60 He couldn't readily go out and get another job and he's had the same job for 20 years being an evaluator for the city so the Loudomer and and and the progeny make the point that from a due process violation if you have a hearing where you can be heard and Where there is a chance that the decision maker might be persuaded you have to have the allegation in front of you You have to answer it. That's due process. You don't need a very very extended proceeding but if you never get that that is a violation if You have to wait two years and not get your money because you might have win and then even let's assume at the post termination You do win there was still that other violation That's that is the logic of it There were there are cases where a party is allowed to go forward In fact, all of the cases since louder more allow a party to go forward regardless of the post termination you're allowed to come into court under 1983 if it's a state and sue and It's because of that policy reason I also don't think that Judge circuit that the If you think that it would be a draconian ruling that you don't have to go forward I then I don't think you even have to reach that in this case. I don't I don't Advocate that that be the ruling. I think that that would if you did you were silent on it There'll be one thing if you said that You had to have a post to go through the post termination hearing I think you would be in conflict with judge Becker's decision in Alvin in judge Becker's decision there You had a professor and he had several issues when he was terminated and he had the transfer issue the post termination post Deprivation hearing was necessary when he wasn't fired Judge Becker drew that distinction But on the part where because the guy didn't go through a post termination at all but judge Becker said that there would be a constitutional violation if he had lost something and the pre the Predeprivation hearing wasn't within what was required by the Constitution But in this case, I started to say you don't have to reach that ruling This is a summary judgment case and it's a denial of a motion to amend I submit and I would like if I have enough time, I'd like to get into it to explain that If the court had allowed us to amend the complaint the case before you would be If he soon we gave summary judgment be a completely different case well When we filed the complaint, we did not know what the FBI had done We thought based on the evidence that my client went to the controller's office on his own as judge O'Neill found And he spilled his guts of all the things that were going wrong at the BRT The corruption and he named high-level politicians and he named people to the controller's office on his own when he came back The controller contacted this is mr. Bridgman. This I think he's the number two man in the city's controllers office Contacted the BRT as he should and said I want to meet with you people and my client was then Chastised by angry people including Miss meter was the head of the BRT not the board, but the civil service level Why'd you go over there? You should never go over alone. Mr. Davies said don't ever go over there alone You shouldn't have been talking about those things. So step one is he is a good citizen He can't he's reached the end of his career. He's going to retire in three years He sees what's going on. His job was to go to a Center City Building and put a valuation on it. He was a property evaluator. Yes. He was the best everybody agrees He was the best in the department he was he knew what he was doing only to find that some politically connected person would come in and The head of the the board would just throw out what he did and he was often told come in with another valuation So if you do something for 20 years, that's your signature. I'm a lawyer. I want things. I love ethical lawyers I love to see great practice love that argument before that's my profession His profession was valuator and to see time after time after time. The ultimate valuation was not the real one He had enough he's coming to the end of his career. He volunteered himself went to Bridgman So he thought he's a whistleblower. He understood where he was. We also thought he's civil service. He'll glide out First thing was that the anger from the his supervisors and the head of that department Next He's called in by the FBI or an FBI guy visits it they show up for me They show up at his place. They show up. They show up where he was where he was in, New Jersey I guess no, but he's still his his belief is that This is all related to What he what he talked about now, what's interesting is is that he was talking about a congressman a United States congressman and What the FBI was interested in was going after Senator Fumo it was the agent who testified for four or five days in the Fumo case who was now going after my client What we didn't know is this and what he didn't know when we wrote the original complaint FBI agent Niccolo Was working with steel Thomas Steele who was with the OIG, but he wasn't an employee of the OIG Then the Seth Williams was the inspector general in order to have a contract person work on a project Seth Williams had to call him up and say look. Mr. Steele. I want you to come we have something to give you We're pay you per diem Steele never got an assignment from Williams instead Niccolo called him the FBI guy because they were working together a year ago Before this call on the Fumo matter. He said look, can you give me some information on Jim Luciani? I want to find out if he is reported his outside property interests because you know Maybe we could get him on one get him on that. And if not that he give me those records Can you go get me his tax records? I want to see if he paid his taxes And I'm working on something where I'm gonna try and tie him into a guy named Lynch at the BRT. What were they doing? Jamming from day one Steele and Niccolo we're going to jam Luciani which is blackmail We're going to use these things potentially against you, but you could give us information on Fumo and these things will never surface But my client at the early stage of the jamming he didn't know that he thought okay I went to Bridgman that probably led to the FBI now want to follow up. He was thrilled He gets a chance to see something happen So he cooperated told him everything he would they want to know about what he thought the congressman But the head wasn't what they wanted So they kept bringing them back and they're very upstate couldn't suggest what they wanted. They kept asking war. What about other politicians? So the first day without going to steal without going to the the IG and saying hey, can I do this? What is your Perception as to why the FBI would do anything other than report the facts as they perceive them I think this is a as we pleaded in our in our mandate complaint This is a rogue agent. He was so into the Fumo case Fumo had it was in the newspaper and a Fumo had gotten a terrific deal and a set of terrific assessment on his property He owned in Philadelphia now turns out my client nothing to do with it. My client did commercial Fumos was residential but everybody knew also to my client had been there for 20 years and That they FBI thought this guy must could tell us How did Fumo how did Fumo get the BRT to lower it down and they already knew that you know He was someone that would know even if he wasn't involved He didn't know but they thought he did and they thought that he would and by the way One of the things that was not in the Fumo trial But was in the indictment was that they were looking for what he did at the BRT and that that just they never got it So let's just recap them One you think you would like to have your complaint would be substantially different if we granted you the The right to amend the complaint and to your answer in to judge Sirica's question as to what are the consequences of a ruling that says that one need not go forward here with regard to a post-hearing or a post termination hearing, excuse me And that response to that was the Schmidt case and the Alvin case where Schmidt Made the explicit holding that you can't that there's not a relationship. There's two if there was a deprivation of due process in the free to pre hearing and It also followed through in the post. That would be two constitutional violations My time is that I just want to finish that and then we'll get you back on rebuttal Okay, just make one point that I wanted to make that I think is really important that the court consider in the whole view of this case Do you want to make it now or do you want? Yes, can I make it right now? Okay The testimony was from a number of the BRT supervisors who sat up there with mr. Folkley who's now deceased They knew for a fact That my client lived in Philadelphia They knew that an allegation That he had admitted or confessed to living in New Jersey would have been my client lying to the to the FBI agent, why did they know that? Several reasons one they called it when he was sick. They called the 215 number where he lived So they went they went to his house Hopefully it went to his house the decision-maker knew where he lived 20 years their friends three They went to a bar and they have at the bar was right across the street from the Cumberland address where my client lived And they will go back and forth that information was noted in the initial complaint. Was it not? Yes But that is your honor astutely pointed out I Knew half of the story what the other half was the FBI and the last point I will make and I Think this is the other critical point Is that there is case law that shows that a First Amendment retaliation claim in this case Often requires a an opportunity to get revenge So my client went to BRT I went to the controllers office and and that made that let's say incited that built up the desire To retaliate against him, but he's a civil service employee There's nothing that anybody could have done until they get an OIG report That for the separate reasons says, oh he lives in New Jersey If they hadn't if he had not going to Bridgman these people would have looked at that and said are you crazy? Four of them five of them for 20 years. They work together. We know where the guy lives What do you mean? He lives in New Jersey, but they didn't They had the pretext right there. It took a couple of months There's only a couple of months and and judge O'Neill missed the point When he made when he confused an unbiased decision maker With not getting having a sham hearing on the one hand and on the other hand when he took the fact issue All of the fact issues and made factual determinations on the paper in a summary judgment motion, thank you very much Thank you, and we'll get you back on rebuttal This is fun Thank you, your honor may it please the court I'm Janus fan and I represent the city and the estate of mr. Folia in this case Just just an opening question Or preliminary question I should say how would the defendants be prejudiced if the district court or we told the district court to grant the motion for leave to amend Well as an initial matter we don't have to establish prejudice in this case the the ruling in this case was that there was undue delay and And we can in the and the district court can rest on undue delay alone And in this case there was undue delay because as the district court found The the plaintiff had enough Information whenever he received the IG report whenever he found out that there was an allegedly false confession in this in this case He knew at that point that the FBI and mr. Steele had allegedly colluded at that moment He had he had all of the information That he needed mr. Luciani Denied access to the OIG report before the June 30 hearing as As the evidence in this case establishes that there's a policy that at the at the pre-termination stage whenever a case rests with the agency That the IG report is not turned over to the employee and IG report is confidential until an employee Use the OIG report to terminate someone on June 30 with a termination letter that's dated June 27 and The person doesn't even see the OIG report on June 30. That doesn't look good Although what happens is is ultimately when the employee enters the litigation stage the employee does receive it which is what happened here a month later whenever Mr. Luciani filed his grievance It was given to him and he was provided with a letter that stated you're being you're being We have an intent to fire you because there is an investigation Active and he was fully informed of the nature of the charges because we were informed of the June 30 hearing about his alleged Confession to an FBI agent about living in New Jersey, right? But as McDaniels establishes, you're not entitled to be apprised of every single piece of evidence You're not entitled to have that evidence But certainly key evidence And that's about as key as it gets although what McDaniels establishes is that you're entitled to be informed enough to Understand the nature of the charges and to give you an opportunity to meaningfully respond and I guess there's two points on that Meaningfully respond Well, how do you meaningfully respond to something that you don't know? Is that it's like swinging at a pitch and you don't see the pitch But in this case, he was able to mount a full defense He mounted he provided witnesses that established that he lived that that established that he allegedly lived in Philadelphia He provided documents that established the phone call and they came back and gave him the letter Predated. I mean it it looks like the decision was made in effect before June 30 and that's when it was drafted up and The person at the hearing doesn't even get a chance to see the key piece of evidence against him I'm having trouble getting over that Although I would point out that McDaniels does that McDaniels does address that point McDaniels does does hold that You can have a situation with a pre-ordained with with a pre-ordained decision You can have a situation where a decision maker has his mind made up In McDaniels, didn't we specifically hold that? McDaniels louder mill rights were not violated Didn't we specifically hold that at McDaniels McDan and McDaniels had a similar fact pattern, but didn't we specifically hold Our court that his louder mill rights were not violated contrast that with this case which it appears that Mr. Luciani's louder mill rights were violated So it's kind of tough if that's the case to rely on McDaniels I'm not sure I'm following you judge Amber, but the the fact pattern is McDaniels is very similar that the allegations in McDaniels were very similar in McDaniels My point to you is do you think that hold in this case similar to McDaniels? that Mr. Luciani's louder-mill rights Were not we're not violated. Do you think we can hold that on two on two separate on two independent and alternative grounds? And they are and they are that that he had an opportunity to meaningfully respond because McDaniel says that That a preordained that having a preordained that having a decision maker who already had his mind made up is not does not violate Does not violate your pre-termination rights and in addition you your pre your your Procedural due process rights are not violated until you've availed yourself of all it isn't part of the problem Zambrano who was on the panel Was asked if mr. Luciani had quote brought in a hundred people who say I saw him every single day get the newspaper wearing his slippers and robe on Cumberland Street in Philadelphia that wouldn't have changed the outcome would it and Zambrano said no But it's a but it's essentially the same fact pattern in McDaniels where the allegations in McDaniels are that that they wouldn't have believed him that that they wouldn't have that they did that the that the that the panel that the Decision makers and McDaniels didn't believe that out that the man who made the allegations Genuine dispute a material fact as to whether mr. Luciani was given a meaningful opportunity to be heard on at the November at the June 30 hearing It's a genuine dispute of fact, but it's not a genuine dispute of material facts judge. Ambrose not material because Because McDaniels considers itself to be addressing that fact pattern of whether you have a preordained decision-maker and McDaniels says That's not troubling to the court because McDaniels Cites the fact that that a sham here that a sham hearing and that's the title of the section there is not Problematic for the court because the court says you're going to get your impartial decision-maker at the post termination stage And therefore that's not problematic because you can rectify any problem at the post termination stage And that's that's a and that's a thing that runs through McDaniels And that's a thing that runs through the Riley case Riley versus Atlantic City, which is on all fours with this case Mr. Foley assigned this termination prior to the hearing We don't know I mean he wasn't able to be deposed But again, I mean and and I would point out that McDaniels cites to the 11th Circuit case in the McKinney versus Pate which says There can be a preordained decision at the pre termination stage and that's not troubling to us because you can rectify that decision at the post termination stage Where if there was if there was an error at the pre termination stage, you can get back pay you can get reinstatement. You can get You can get you can get your your recovery there And I just don't see how they would get past the trifecta of Riley the trifecta and and McDaniels and Alvin Which again Alvin says I'm not sure how Mr. Green is citing Alvin because Alvin was a case where the plaintiff claimed that the pre termination his pre termination remedies and his post termination remedies were infected and Therefore he didn't pursue his post termination remedy as mr Luciani didn't and Alvin says if there's a process on the books that appears to provide you due process You can't skip that process and use the federal courts to get back what you want, which is exactly what mr. Luciani is doing Judge Roth louder mill actually addresses that issue where the plaintiff had contended it was going to take him nine months and louder mill says Okay at a certain point Due process isn't meaningful if it's going to take a long time, but you have to put on the record Why it's why it's taking you a long time and is that the fault of the city or is that the fault of your lawyers? And it's and and and in louder mill the court said The plaintiff hadn't established why it was taking so long to get due process and that's exactly the case here And in fact in this case The plaintiff has spent more time blaming the Union than he has blaming the city and where he hasn't put on the record Why it's that why it took him so long to get that grievance He can't go back and blame us and say it's that he doesn't have meaning that he didn't have meaningful Post-termination process and blame that on us So I would point to louder mill if he wanted to make that claim and in fact in this situation He's waived that claim because he hasn't brought that claim on appeal When let me switch gears for a moment when mr. Luciani was talking to the controller's office about what was going on in the BRT Was he speaking as a citizen or was he speaking as an employee? He was speaking as an as an employee judge Ambrose How so because they didn't do you think anybody really wanted him to go and talk about? Internal matters at BRT in fact he was told specifically later on Don't go ever again You weren't supposed to go without anybody's accompanying you and don't go ever again without somebody accompanying you His testimony is that he was instructed by by Dean Davey to go over and attend a meeting but not in other words to go to a meeting and tell controllers office about internal BRT activities that could cause a Quote scandal close quote his testimony was he was instructed to go over and talk to talk about what? To go over and talk to Philip Bridgman in connection with this audit not to It wasn't it wasn't a situation where he was told to go where he went over out of the blue with the FBI Was he doing that as an employee? Or as a citizen and there's no evidence that that the that the people at the BRT knew that he was going to the FBI And so well, it's a thing then not at not at the time Yes, but but if it but with respect to going to the controller that the evidence is according to him that he was instructed to And and the district court also ignored evidence that he went in connection with it with and with the routine audit Let's talk about more things than just an audit With with the persons at the well The audit the audit the audit had the audit concerned the files that he was in charge of the audit concern Discrepancies that the controller had noted that were discrepancies that were files Within his responsibility They had turned they had found the discrepancies that he was talking about He's saying something quite different than what you were saying. Isn't that an issue that really needs to get resolved at trial? Um, no, judge Amber. He's saying he said exactly what I'm saying, and he can't contradict it He's saying exactly what I'm saying that he went to the controller at the direction of Jean Davey go to a meeting But he his argument is or contention is that he was not He went to that meeting and went beyond What he was sent to the meeting for he went to that meeting to talk about activities That probably no one wanted to see the light of day if they're true No Respectfully general. I don't believe that is his testimony and I believe that that he and his supervisors agree about what? Jean Davey and Zambrano we're talking about they told they didn't they didn't reprimand him for going over and talking about these things They reprimanded him for going over alone and they told him you should go over to protect yourself They didn't reprimand him for talking about it Yes, and there and their testimony is entirely consistent with his on that point as late as March of 08 Mr. Luciani continued to give information about corruption at the BRT to the FBI I believe his testimony said he had that he initially talked to them but there I mean there's no evidence about about ongoing about ongoing discussion and the evidence the only evidence of Hostility was was there was discussed that's admissible is Evidence that Charles read Amid was disturbed about the initial meeting With he had with Bridgman and that's very that's very weak evidence, particularly given. Well, she did make statements that one a juror might consider to be Being upset and be perhaps retaliatory or wanting to be retaliatory Respectfully, I would Commit on that I'm just saying she didn't make statements that some people might consider to be Retaliatory or evidencing a retaliatory motive I Would I would take issue with the admissibility of those things? Right and in it right and in addition a material issue of fact No, I wouldn't consider that to be material and in addition I would what would be material then I wouldn't consider those I wouldn't consider those to be admissible and in addition I would point out that Mara and Woodson talk about there being a pattern of antagonism and The only evidence that he points to to the extent that it would even be admissible or statements coming out of that meeting And there's nothing in between that meeting which was in October of 2007 And then you have to go all the way to June 2008, which would be the discharge Which would be the the hearing concerning the discharge before anything? Retaliatory ever happens to him concerning the BRT BRT is a decision-maker here And I would submit that under Mara and under Woodson that just doesn't pass the test There's nothing suspicious No, I would ask the court to look closely at riot cases like Riley and Alvin and And McDaniels because they control this case with respect to the fact that mr. That mr. Luciani failed to Take it to take advantage of the post termination remedy in this case. And therefore there was no Procedural due process violation in those cases that you cited with where there was Was there notice of a pre termination hearing yes And the plaintiffs the plaintiffs contended that there were that they that their pre-termination rights were violated and they failed to take advantage in in Riley and in Alvin Plaintiffs contended there were their pre-termination Notice of it in those cases. Do you recall and in Riley? Yes, and in Alvin? Yes Yes Thank you Mr. Green I will I'd like to just three just three points that were raised In terms of where I think I could help the court In Alvin Judge Becker divides the requirements Based on what the deprivation was There there was a part of Alvin the council References where it was necessary to go through the whole process And that is the first part of Alvin where the professor claimed He was denied the right to go to use I think a chemistry lab and in that case It was not a deprivation of his money or something else it was the deprivation of a benefit and in that case he judge Becker said that his the Plaintiffs failure there to go through the whole process Was fatal to his claim, but there also was a another claim that was more tangible and in that case judge Becker looked at the louder moral decision and said look you it's a there is a perfected constitutional violation if you don't get a pre deprivation hearing Okay, I'd like to answer that now so I Think that The concept of amending the complaint is cannot be looked at in a vacuum and and fortunately for lawyers judges or lawyers also Look at what with the position I would have been in in the beginning of the case in light of the Ashcroft case and the other cases that have Emanated from it an Ashcroft of course was decided before I had to make the decision I The information that I had before me in terms of the FBI at the time the complaint was filed was one thing. I Saw an OIG report written by a person who my client thought was not honest. Mr. Steele And in it there was a statement that the FBI reported that Luciani had confessed That was all I had. I had other contrary information. For example, there was a meeting with Luciani and Steele and Niccolo in a lawyer's office Happened to be mine and there was an agreement reached they wanted information Luciani still didn't know This was in this is in the record Luciani still didn't know that they're going after FOMO because they're they're keep asking about corruption and anybody else and anybody else and he said he's they came over they and the deal was Look what's going on with this this? Residency thing he doesn't live in New Jersey And if we give you what you want where you finally put that to rest and they said yes They came in there and there and they specifically agreed. Yes, there's nothing to it. Niccolo said forget about it. Don't worry about it What Niccolo did was throw him under the bus because after he didn't get what he needed Rather than go tidy up and go back to Steele and say to Steele. I'm sorry. I can't I we can't use this He left it in or alternatively the jury might find Steele would never have been paid if he didn't leave that in because he volunteered he never got authorization He got paid when he turned in a finding that said this guy I find that a finding in an OIG report and that the guy doesn't lives in New Jersey pay me if he came in He said I volunteer to take on an OIG a report on residency Even though there was a written agreement with the controller's office That's part of the record that said the controller would take care of all Residency issues now Steele would go in to Seth Williams or whoever replaced him I think it was Amy Kerlin and said look I volunteer to do this. I did an investigation You owe me $20,000 and by the way, there's nothing wrong. He lives in Pennsylvania He never would have gotten paid so one of them either Niccolo left left it in there and didn't tell Steele to take it out or Steele had a motive to leave it in because he would not get paid. That was the only basis they had that so Answering the question. I only had one piece of evidence My client said he did not make that confession Let's suppose I would have named Niccolo as it as a defendant in the beginning of the case Under asker off the court judge O'Neill would say what that's what's plausible here There are other equally plausible things equal to the wrongdoing. For example, there's a dispute. Okay, but Maybe they maybe He misheard him. Maybe there was a misunderstanding. Maybe the maybe what he wrote down is what he thought maybe he was negligent Maybe he was careless. None of that would have amounted to a Bivens requirement of substantive due process that shocks the conscience How could I ever without shocking my own conscience and in light of rule 11 make the allegation at that time? I took their depositions. I took the deposition of Niccolo and his partner and Mana, and they denied it. They said no he your client told us this I am NOT in a better position when I take their depositions than I was before How could I ever argue in good faith under Ashcroft that I it was number one that it satisfies the plausibility test? We're number two that there just was a misunderstanding But then at this point you want anything else you want to add in addition? That's so because of that because of that We were not late. We we fought we we got the information from Niccolo He let the whole thing out the whole jamming thing out explained. What was going on? We got the circumstances how the FBI tagged him Then we filed the event a complaint. There was no prejudice the u.s. Attorney Represented the FBI agents at at the hearing Counsel for the city was there. They got all the documents that were there. It doesn't change the dollar value of the claim It doesn't change the cause of action. It just adds one more thing and they have not at them the timing and Extreme prejudice are together and not two separate things and they have not even alleged extreme prejudice Thank you. Thank you very much. Thank you to both counsel for well-presented arguments. I would like to have counsel get together with the clerk's office and have a Transcript prepared of this oral argument and just split the cost. Thank you very much. We'll be glad. Thank you very much